THE FIRST NATIONAL BANK OF RACINE, Respondent, vs. CASE, Appellant.

*March 5 — March 31, 1885.*

*Promissory notes: Renewal: Presumption of payment of debt: Evidence.*

1. The cancellation and surrender of a promissory note upon the giving of a new note in renewal thereof does not raise any presumption that the renewal note is taken in *payment* of the debt, but an agreement to that effect must be shown.

2. The evidence in this case is *held* to sustain a finding of the trial court that none of the renewal notes given from time to time operated as a payment or discharge of the original debt.

APPEAL from the Circuit Court for *Racine* County.

The complaint alleges that on December 21, 1878, the plaintiff loaned the defendant $5,000, to be used, and which was used, in the business of Fish Bros. & Co., in which business the defendant was the principal and Fish Bros. & Co. were his agents; that said loan was evidenced by the promissory note of the defendant signed "Fish Bros. & Co.;" that said note was renewed at maturity by a note signed in the same manner, and said indebtedness has been renewed from time to time, each renewal note being signed in the same manner as the original, and the last of said notes being dated August 6, 1883; that the defendant adopted the original note as his own and informed the plaintiff that he was liable thereon; and that no part of said principal sum has been paid. Judgment is demanded for said principal sum, with interest from November 9, 1883.

The answer alleges, among other things, the commencement of the action of *Case v. Fish and others* to determine this defendant's rights as principal in the business of Fish Bros. & Co. and that in that action, on December 18, 1880, he obtained an injunctional order, of which the plaintiff herein had notice, forbidding Fish Bros. & Co. from incurring any

debts or obtaining any discounts or advances in or upon the name of the defendant herein, or on his responsibility or credit; that at the time of the commencement of that suit this defendant notified the plaintiff that he would not be liable for any subsequent transactions or contracts of said Fish Bros. & Co., or any credits they might thereafter obtain; that the original note of December 21, 1878, has been fully paid; that if said original note has been renewed as alleged, or if the plaintiff has not received the money loaned thereon, the plaintiff, after it had notice of the termination of the agency, took the note of Fish Bros. & Co. in satisfaction of said original note or of the renewals thereof, relying solely on the credit and responsibility of the persons composing that firm and not on this defendant.

The cause was tried by the court without a jury. A sufficient statement of the evidence will be found in the opinion. The court found in favor of the plaintiff, and from the judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Jas. G. Jenkins* and *Wm. F. Vilas*, of counsel, and *C. H. Lee*, attorney, and the cause was argued orally by *C. H. Van Alstine*. They contended, *inter alia*, that it was not essential to show an express and specific agreement that a new note should be received in satisfaction of the original debt or the note by which it is evidenced. All the circumstances will be resorted to to ascertain the character of the transaction, and even the subsequent acts of the payee may be considered. *Hotchin v. Secor*, 8 Mich. 494; *Brown v. Dunckel*, 46 id. 29; *Cake v. Bank*, 86 Pa. St. 303; *Haines v. Pearce*, 41 Md. 221; *Whitbeck v. Van Ness*, 11 Johns. 414; *Palmer v. Yager*, 20 Wis. 100; *Johnson v. Weed*, 9 Johns. 310; *Hart v. Boller*, 15 Serg. & R. 162. The canceling and delivering up the note, and marking it paid, was of itself *prima facie* proof of its payment. *Flower v. Elwood*, 66 Ill. 438; *Wells v. Robb*, 9

Bush, 26; *Nicholson v. Leavitt*, 4 Sandf. 308; *Beach v. Endress*, 51 Barb. 570. It is also well settled that where a note is taken with knowledge on the part of the taker that the maker is agent of a disclosed principal who alone is liable for the debt for which the note is given, it is conclusive evidence that the note was given and taken in extinguishment of the debt of the principal. *Paige v. Stone*, 10 Met. 160; *Arnold v. Camp*, 12 Johns. 409; *Ames Co. v. Tucker*, 8 Mo. App. 95; *Paterson v. Gandasequi*, 15 East, 62; *Newmarch v. Clay*, 14 id. 239.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Dodge*.

COLE, C. J. A jury was waived in this case, and the cause was tried by the circuit court. That court decided, in effect, that the defendant was liable to the plaintiff upon the original loan of December 21, 1878, and that this liability continued when the note in suit was given. The court also held that the original loan had never been paid, but had been extended from time to time by renewal notes, taken by the plaintiff, which were signed "Fish Bros. & Co., Agents," or "Fish Bros. & Co." No question is made as to the liability of the defendant upon the original loan. His counsel frankly admit that he was personally responsible for that debt, and such was undoubtedly the fact. But they claim that the evidence clearly shows that this debt was satisfied and discharged by some one of the renewal notes which the evidence shows was given. The learned counsel present quite an array of facts or reasons to sustain that contention.

It would be unprofitable to discuss at length the evidence upon which such a conclusion is based. It will be borne in mind that this court refuses to disturb the findings of the trial court on questions of fact, unless they are against the clear weight of testimony. This rule has been announced

JANUARY TERM, 1885.                    507

The First National Bank of Racine vs. Case.

so often that it has become trite. What, then, is the evidence which clearly shows that the original note of December 21, 1878, has been paid and discharged? We believe it is not claimed that any of the renewal notes given prior to that dated March 9, 1881, were delivered to and accepted by the plaintiff in payment or extinguishment of the original indebtedness of the defendant. Up to that time the loan had been continued on renewal notes of three and four months in the usual course of business. But when this last note was given it is said the facts proven lead irresistibly to the conclusion that it was taken by the plaintiff in absolute payment of the note signed "Fish Bros. & Co., Agents," of November 6, 1880. The principal facts relied on to sustain this position are the commencement of the suit of *Case v. Fish*, to determine their respective rights in the business of manufacturing wagons at Racine, of all which the plaintiff had notice; the written notice of *Mr. Case* to the plaintiff and other creditors of that business, of December 18, 1880, revoking the agency of and refusing to be bound by any act or contract of Fish Bros. & Co.; the circular of Fish Bros. & Co. of December 21, 1880, to their creditors, including the plaintiff; the transfer by the plaintiff on its books of a small balance of the account of Fish Bros. & Co., agents, to a new account with Fish Bros. & Co., December 21, 1880; the confidence of the plaintiff in the pecuniary responsibility of Fish Bros. & Co., irrespective of and aside from any claim of *Mr. Case* in the business; the cancellation and surrender to Fish Bros. & Co. of the note of November 6, 1880; the acceptance from Fish Bros. & Co. of renewal notes and cash payments of interest down to January 1, 1883; the change in the firm of Fish Bros. & Co., and the giving of new notes to the plaintiff in cancellation, on surrender, of old notes of the firm; and some other less important facts.

It may be admitted that these facts, unexplained, would

tend with more or less force to justify the inference which counsel seek to deduce from them; but, when considered with other testimony in the case, they can have no such effect as evidence. The correctness of this remark must be apparent, in view of the clear and decisive testimony of the officers of the bank who transacted the business with Fish Bros. & Co. The cashier and the president explain at length, and quite satisfactorily, the method of transacting the business of the bank, especially the way the original loan, or the note by which it was evidenced, was extended. They say the uniform custom was to give and receive renewal notes from time to time. The cashier says, in substance, that Fish Bros. & Co. would come to the bank when a note was due and say they wanted to renew, and would give a new note; and the old one would be stamped "paid" and handed to them. There were two methods of transacting this business, but they amount essentially to the same thing. The debt, or original loan, was extended by renewal notes, and both the cashier and president say, most explicitly and positively, that there was no understanding or agreement whatever that any of the several notes should be received, or were in fact received, except as renewal notes; that the original loan was never paid, but was carried along from time to time.

This evidence is perfectly conclusive and decisive on this point, and shows that the plaintiff never accepted, in payment or satisfaction of the original loan or note, any one of the renewed notes. Consequently it is impossible to say, as it appears to us, that the original debt was extinguished by any or all of the transactions mentioned, unless we discredit entirely the testimony of the officers of the bank, which we certainly have no right to do upon this record. The fact that when a renewal note was given the old note was delivered to Fish Bros. & Co., stamped "paid," is explained. That was done according to the custom of the

bank, and to prevent the old note from being used again, not because the debt evidenced by the note was satisfied and discharged. In respect to the other facts relied on to show payment, they are all explained so as to be quite consistent with the plaintiff's contention that the original loan of December 21, 1878, had never been satisfied and discharged. It is true, Fish Bros. & Co. changed the way of signing the renewal notes after November 6, 1880. It was natural they should do so, in view of the injunctional order of December 18, 1880. They doubtless desired to avoid the appearance of violating the terms of that order.

But it is further said, after *Mr. Case* revoked the agency of Fish Bros. & Co., they had no right or authority to enter into new contracts which should bind him. It may well be that after such revocation they could not make him personally responsible on new contracts or obligations entered into about the management of this business. But in respect to loans which had already been made on his credit they might obtain extensions, though *Mr. Case* would have the right at any time to pay such loans, notwithstanding the extensions. On the second appeal of *Case v. Fish* [*ante*, p. 475], this court held that until *Mr. Case's* rights in the business were determined by the decision on the first appeal, Fish Bros. & Co. were in possession of the business and could conduct it for *Mr. Case's* benefit. They could doubtless pay off the debts of the concern, or make any arrangement for the extension of existing indebtedness which did not prejudice his rights.

Therefore, without further discussing the facts, we state our conclusion that upon the proofs we are not justified in reversing the decision of the circuit court on the defense of payment. Of course, the *onus* was upon the defendant to show by direct and positive proof that the plaintiff had agreed to receive some one of the renewed notes as a payment and discharge of the original loan. The surrender of

the old note upon a new one being given does not raise any presumption of the extinguishment of the debt, but an agreement must be shown that it should have that effect. The defense of payment is attempted to be established here by facts and circumstances not conclusive in their probative force even when not met by countervailing evidence. But, in the light of other explanatory testimony, they have but little effect to prove the defense. They certainly fall far short of proving an agreement or understanding on the part of the bank that any renewed note should pay the debt. It was essential to show that such note was by agreement accepted as a satisfaction and discharge of the debt, to have that effect. This surely was not shown by any evidence in the case. In this state there is no presumption of payment where the creditor receives a note for a debt, but an express agreement must be shown. *Paine v. Voorhees*, 26 Wis. 522; *Aultman & Co. v. Jett*, 42 Wis. 488; *Hæflinger v. Wells*, 47 Wis. 628.

We do not feel called upon to dwell upon the point that there was a novation or substitution of debtors in the case. It seems to us there is no evidence whatever to sustain that position. Upon the whole record we think the judgment is correct, and must be affirmed.

*By the Court.*— Judgment affirmed.