*772 OPINION.
Arundell:
Petitioners contend that the interest item of $104,721.43 became taxable income in 1920, when the notes of the Chippewa Power Company were received, rather than in 1922, when the notes were liquidated. They urge that under the laws of both Wisconsin and Massachusetts the presumption is that a negotiable promissory note of a third person is given in satisfaction of a preexisting debt, rather than as mere evidence of the debt. See Quimby v. Durgin, 148 Mass. 104; 19 N. E. 14; The Kimball, 3 Wall. 37; Grubbe v. Lahay, 156 Wis. 29; 145 N. W. 207. Whatever the rule may be as between the maker and holder of the notes, it is not necessarily controlling in deciding the question of when income is realized. Hart v. Commissioner, 54 Fed. (2d) 848. But .granting that the rule urged is correct, the notes would be income in the year of their receipt only to the extent of their value. Aaron W. Wolfson, 1 B. T. A. 538; Percy K. Hexter, 8 B. T. A. 888. The evidence in this case is to the effect that the accounting practice of the partnership was to enter interest notes as income in the year of receipt, but in this instance they were not so entered because of the doubt as to their collectibility. The maker of the notes was without funds to pay them, and the value of the group of notes, covering both principal and interest, was not more than the amount of the principal. Under these circumstances we think it was proper not to record or report the interest notes as income in 1920 and that it was proper to include in income for 1922 the amount received in payment of them.
Whether the item of $153,000 was taxable income in 1922 depends upon whether the cost of the Chippewa Power Company bonds to the partnership was $900 per $1000 bond, as contended by petitioners, or $815 as contended by respondent. Petitioners contend, (1) that the oral agreement of May, 1922, fixed the price at $900 and that that agreement was not superseded by the written agreement, and (2) that, if the written agreement controls the transaction, it fixed a lump-sum consideration for both bonds and stock and an equitable apportionment should be made, based on the relative values of the two classes of securities. Kespondent argues that the written contract provides for a cost price of $815 for each bond, and as a matter of fact that was all that the partnership paid for the bonds.
Our view of the matter is that the written contract should be construed as providing for a lump sum to be paid for the bonds and stock and that the agreement to pay specified sums upon the delivery of each bond and each certificate of stock was merely a method of payment. The evidence is clear that such was the intent of the parties to the agreement, and, in so far as the bonds were concerned, *773 it was carried out in that manner and so recorded -on the partnership books. Due to unforeseen circumstances the preferred stock could not be issued, but in lieu thereof the Chippewa Company issued its notes, which, the evidence shows, were of the same value in relation to the bonds as the stock originally contemplated. It is clearly established that the bonds were worth at least 90 and the stock not more than 85. In the face of this evidence it seems obvious that to hold that the cost of the bonds to the partnership was at the rate of 81%, as contended by respondent, would be to do violence to the intent and the agreement of the parties. Petitioners do not contend that the $153,000 was never income. On the contrary, they admit that it was, but they say that it was realized in 1926, when the transaction between the partnership and the Chippewa Company was brought to a conclusion. We are not called upon to determine whether it was income in 1926, but we are satisfied that it was not income in 1922. Even if it be conceded that the figures of $815 and $100 set out in the written agreement were designed to represent “ cost ” of the bonds and stock, respectively, we could not say, in the light of the evidence, that they were bona fide figures. Tax liability may not be fixed or evaded by means of inserting fictitious prices in contracts. Had the agreement provided, for example, that the partnership was to pay a sum considerably in excess of the face amount of the bonds, we clearly could not say, in view of the relation of the partnership and corporation and the evidence as to values, that a bona fide loss had been sustained upon the sale within a day or two at less than the face amount of the bonds.
We accordingly hold that the interest item of $104,721.43 was properly included in income in 1922, and that the amount of $153,000 income from the sale of bonds was not realized by the partnership in 1922.

Decision will be entered under Rule 50.